IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MANDY WILSON, on behalf of herself and all other similarly situated, | Case No. 1:23-cv-131 |
| Plaintiff, | |
| v. | |
| TRANSUNION, LLC | |
| Defendant. | |

## CLASS ACTION COMPLAINT

NOW COMES the plaintiff, MANDY WILSON, by and through her attorneys, SMITHMARCO, P.C., suing on behalf of herself and all others similarly situated, and for her Class Action Complaint against the defendant, TRANSUNION, LLC, Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §1681, et. seq.

2. This is a consumer class action for actual and statutory damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681, et. seq. Plaintiff brings this action on behalf of consumers throughout the country who have had their consumer report impermissibly furnished by TransUnion to third parties, as alleged below.

### II. JURISDICTION & VENUE

3. Jurisdiction arises under the Fair Credit Reporting Act 15 U.S.C. §1681, et. seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.  PARTIES

5. MANDY WILSON, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Indianapolis, County of Marion, State of Indiana.

6. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

7. TRANSUNION, LLC, (hereinafter, "Defendant"), is a business entity that regularly conducts business throughout every state and county in the United States and as a corporation that does business in the State of Indiana, is a citizen of the State of Indiana.

8. At all relevant times Defendant was a "person" as that term is defined by 15 U.S.C. §1681a(b).

9. At all relevant times Defendant was a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

### IV.  ALLEGATIONS

10. As alleged in this pleading, "credit reports" are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

11. Prior to March 4, 2020, Plaintiff had an account with US Bank for a Kroeger Mastercard.

12. On March 4, 2020, Plaintiff filed a Chapter 7 bankruptcy petition (hereinafter, the "Bankruptcy Petition") in the United States Bankruptcy Court for the Southern District of Indiana (hereinafter, the "Bankruptcy Court"), commencing bankruptcy case number 20-01283-JJG-7.

13. At the time Plaintiff filed her Bankruptcy Petition, she owed a debt to US Bank relative to her Kroeger Mastercard (hereinafter, "the Debt").

14. The Debt was assigned to and/or purchased by a debt collector, Portfolio Recovery Associates, LLC (hereinafter, "Portfolio"), for collection from Plaintiff.

15. Plaintiff scheduled the Debt in her Bankruptcy Petition.

16. On or about July 18, 2020, the Bankruptcy Court entered an order discharging Plaintiff's debts, thereby extinguishing her liability for the Debt (hereinafter, "the Discharge Order").

17. When the Bankruptcy Court entered the Discharge Order, the debtor-creditor relationship ended between Plaintiff and US Bank and/or Portfolio as to the Debt

18. Moreover, at the time of Plaintiff's discharge, there were no assets in the bankruptcy estate from which to make any distribution to Plaintiff's potential creditors.

19. Given that Plaintiff's bankruptcy discharge resulted in a *Report of No Distribution* (i.e., Plaintiff had no assets in her estate to distribute to any creditors), any unsecured debts that were incurred prior to the filing of Plaintiff's bankruptcy petition are considered discharged, irrespective of whether the debt was specifically listed in Plaintiff's schedule of creditors, filed as part of her Bankruptcy Petition.

20. The Debt, and any other account(s) Plaintiff had with US Bank and/or Portfolio, or that had been assigned to US Bank and/or Portfolio, and that had been incurred prior to the date Plaintiff filed her Bankruptcy Petition, were effectively discharged as of the date of the Discharge Order.

21. On or about July 22, 2020, the Bankruptcy Court served a Certificate of Notice on Portfolio, which included a copy of the Discharge Order.

22. As of July 22, 2020, Portfolio was effectively put on notice that any debt incurred prior to the filing of Plaintiff's Bankruptcy Petition was discharged.

23. Portfolio was aware that any debt incurred by Plaintiff prior to March 4, 2020, which was assigned to Defendant for collection, was discharged in bankruptcy.

24. At no time since July 18, 2020, has Plaintiff owed any debt to U.S. Bank and/or Portfolio.

25. TransUnion, LLC is a consumer reporting agency as that term is defined by 15 U.S.C. § 1681a(f). Trans Union is a data repository that assembles and stores information on consumers for the purpose of furnishing consumer reports to third parties.

26. Consumer reports contain personal, private, and highly confidential information, including: (i) different variations of an individual's full name, including middle name and/or middle initial(s); (ii) current address at which an individual resides; (iii) previous address(es) at which an individual has resided; (iv) social security number; (v) date of birth; (vi) current telephone number; (vii) previous known telephone number(s); (viii) current employer; (ix) former employer(s); (x) public records; (xi) account histories with all reporting creditors, including, but not limited to, home loans, car loans, credit cards, charge cards, and store cards; and, (xii) records of requests for a consumer report by third parties (hereinafter collectively, "Confidential Information").

27. Given the overwhelming scope of the information available when one procures a consumer report about another, in 1970 Congress enacted the FCRA to protect consumer privacy by requiring consumer reporting agencies to, *inter alia*, limit the furnishing of consumer reports to statutorily enumerated purposes only. See *TRW Inc., v. Andrews*, 534 U.S. 19, 23 (2001).

28. The statute was created in response to "concerns about corporations' increasingly sophisticated use of consumers' personal information in making credit and other decisions." *Syed v. M-I, LLC et al.,* 846 F.3d 1034, 1037 (9th Cir. 2017) (citing the FCRA, Pub.L. 91-508, Section

602, 84 Stat. 1114, 1128). *See also*, *United States v. Bormes*, 568 U.S. 6, 7 (2012) (The Fair Credit Reporting Act has as one of its purposes to "protect consumer privacy" (quotation and citation omitted)); *Cole v. U.S. Capital*, 389 F.3d 719, 723 (7th Cir. 2004) ("In [§1681] Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained by consumer reporting agencies.").

29. When it enacted the FCRA, Congress found, among other things, that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

30. Tasked with protecting a consumer's privacy, the FCRA governs **who** can access consumer report information from credit reporting agencies and **for what purpose**. To that end, the FCRA enumerates certain "permissible purposes" for accessing credit reports.

31. Portfolio is a subscriber and user of consumer reports issued by TransUnion.

32. Portfolio also furnishes data to TransUnion about its experiences with its customers and potential customers.

33. Portfolio is a "furnisher" of information as contemplated by the FCRA, 15 U.S.C. § 1681s-2(a) & (b), that regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agency about its transactions and/or other experiences with consumers.

34. TransUnion has a symbiotic relationship with Portfolio such that TransUnion receives information furnished to it by Portfolio and also sells information to Portfolio regarding, *inter alia*, a consumer's creditworthiness and their credit sanding.

35. Upon receiving notice of the fact that Plaintiff had received a bankruptcy discharge, Portfolio communicated to TransUnion that the Debt had been discharged.

36. Given that the Debt had been discharged, the permissible purpose for Portfolio to procure consumer reports from consumer reporting agencies such as Defendant was effectively negated.

37. Prior to July 18, 2020, Portfolio had a standing request with TransUnion that TransUnion provide it with regular consumer reports to facilitate Portfolio's continuous review of the creditworthiness of Plaintiff and facilitate a collection strategy.

38. The request for a consumer report directed to a consumer reporting agency by a creditor and/or debt collector of an existing account is commonly known as an "account review".

39. Upon receiving notice of the fact that Plaintiff had received a bankruptcy discharge, Portfolio communicated to TransUnion that Plaintiff had received a bankruptcy discharge.

40. Upon receiving notice of the fact that Plaintiff had received a bankruptcy discharge, Portfolio communicated to TransUnion a deletion request for all further account review consumer reports for Plaintiff.

41. Upon receiving notice of the fact that Plaintiff had received a bankruptcy discharge, Portfolio communicated to TransUnion that it no longer wished to receive consumer reports for Plaintiff.

42. Upon receiving notice of the fact that Plaintiff had received a bankruptcy discharge, Portfolio instructed TransUnion to refrain from sending it further consumer reports for Plaintiff.

43. At no time on or prior to January 20, 2021, did Plaintiff give TransUnion authority to sell her individual and personal credit report to Portfolio.

44. On or about January 20, 2021, despite being cognizant of the facts as delineated above, TransUnion sold Plaintiff's individual and personal credit file to Portfolio.

45. On or about January 20, 2021, at the time TransUnion sold Plaintiff's individual and personal credit report, TransUnion allowed Portfolio to review Plaintiff's private information without a permissible purpose to do so.

46. On or about January 20, 2021, at the time TransUnion sold Plaintiff's individual and personal credit report, TransUnion allowed Portfolio to obtain information relative to Plaintiff's personal and individual credit accounts.

47. On or about January 20, 2021, at the time TransUnion sold Plaintiff's individual and personal credit report, TransUnion allowed Portfolio to obtain information relative to Plaintiff's payment history on her individual credit accounts.

48. On or about January 20, 2021, at the time TransUnion sold Plaintiff's individual and personal credit report, TransUnion allowed Portfolio to obtain information relative to Plaintiff's credit history and credit worthiness.

49. On or about January 20, 2021, at the time TransUnion sold Plaintiff's individual and personal credit report, Plaintiff's private financial information was published to Portfolio.

50. On or about January 20, 2021, at the time TransUnion sold Plaintiff's individual and personal credit report, TransUnion allowed unknown employees, representative and/or agents of Portfolio to view Plaintiff's private financial information.

51. On or about January 20, 2021, at the time TransUnion sold Plaintiff's individual and personal credit report, January 20, 2021, TransUnion allowed Portfolio to obtain personal information about Plaintiff, such as her current and past addresses; date of birth; employment history; and telephone number(s).

52. On or about January 20, 2021, at the time TransUnion sold Plaintiff's individual and personal credit report, TransUnion allowed Portfolio to access Plaintiff's individual and

personal credit report, and Plaintiff's personal information, as delineated above, was published to Portfolio.

53. On or about January 20, 2021, at the time TransUnion sold Plaintiff's individual and personal credit report, TransUnion had no reason to believe that Portfolio intended to use Plaintiff's information in connection with a credit transaction.

54. On or about January 20, 2021, at the time TransUnion sold Plaintiff's individual and personal credit report, TransUnion had no reason to believe that Portfolio intended to use Plaintiff's information for employment purposes.

55. On or about January 20, 2021, at the time TransUnion sold Plaintiff's individual and personal credit report, TransUnion had no reason to believe that Portfolio intended to use Plaintiff's information in connection with the underwriting of insurance.

56. On or about January 20, 2021, at the time TransUnion sold Plaintiff's individual and personal credit report, TransUnion had no reason to believe that Portfolio intended to use Plaintiff's information in connection with Plaintiff's eligibility for a license or other governmental benefit.

57. On or about January 20, 2021, at the time TransUnion sold Plaintiff's individual and personal credit report, TransUnion had no reason to believe that Portfolio intended to use Plaintiff's information as a potential investor/servicer/insurer, in connection with an existing credit obligation.

58. On or about January 20, 2021, at the time TransUnion sold Plaintiff's individual and personal credit report, TransUnion had no reason to believe that Portfolio intended to use Plaintiff's information in connection with the issuance of a government-sponsored, individually billed, travel charge card.

59. Plaintiff has a right to have her Confidential Information kept private.

60. No individual/entity is permitted to obtain and review Plaintiff's personal and confidential information unless either Plaintiff provides her consent for the release of the information, or the individual/entity has a permissible purpose to obtain the confidential information as enumerated by the FCRA.

61. TransUnion sold to Portfolio Plaintiff's consumer report without a permissible purpose.

62. TransUnion's conduct, as delineated above, is a violation of 15 U.S.C. §1681b.

63. TransUnion invaded Plaintiff's privacy when it sold Plaintiff's credit report to Portfolio without a permissible purpose.

64. By its actions, when TransUnion sold to Portfolio Plaintiff's individual and personal credit report without a permissible purpose, it permitted Portfolio to invade Plaintiff's privacy.

65. TransUnion intruded upon the seclusion of Plaintiff's private affairs when it sold Plaintiff's credit report to Portfolio without a permissible purpose.

66. By its actions, when TransUnion sold to Portfolio Plaintiff's individual and personal credit report without a permissible purpose, it effectively allowed Portfolio to intrude upon the seclusion of Plaintiff's private affairs.

67. When Plaintiff discovered that TransUnion had sold her personal, private and confidential information to Portfolio, Plaintiff was extremely angry, frustrated and suffered emotional distress resulting from this invasion of her privacy.

68. When Plaintiff discovered that TransUnion had sold her personal, private and confidential information to Portfolio, Plaintiff was extremely worried, concerned and frustrated that TransUnion would continue to publish her information to unknown third parties indefinitely.

69. When Plaintiff discovered that TransUnion had sold her personal, private and confidential information to Portfolio, Plaintiff was concerned about the continued security and privacy of her Confidential Information.

70. When Plaintiff discovered that TransUnion had sold her Confidential Information to Portfolio, after Plaintiff's bankruptcy discharge, Plaintiff believed that TransUnion would continue to act with impunity and continue to publish without a permissible purpose her Confidential Information indefinitely.

71. The actions of TransUnion caused Plaintiff to suffer from frustration, anxiety and emotional distress that manifested itself such that: (i) Plaintiff had difficulty falling to sleep and/or staying asleep; (ii) Plaintiff had a loss of appetite.

72. Pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, Trans Union is liable to Plaintiff and the Class for Willfully and negligently furnishing a copy of Plaintiff's and the Class's consumer reports without a permissible purpose, having previously been instructed by the recipient of the consumer report to refrain from furnishing further reports regarding Plaintiff and the Class.

## V. CLASS ACTION ALLEGATIONS

73. Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following classes of individuals:

> *All natural persons residing within the United States and its Territories who, beginning five (5) years prior to the filing of this Complaint and continuing through the conclusion of this action had their consumer report impermissibly furnished to a former creditor and/or debt collector relative to an account and/or debt and the creditor and/or debt collector had*

>   *previously instructed TransUnion to refrain from furnishing any further consumer reports with respect to that account or debt.*

74. Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

75. **Numerosity. Fed. R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. Defendant sells thousands of consumer reports on consumers each year, and those persons' names and addresses are identifiable through documents maintained by Defendant.

76. **Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class and predominate over the questions affecting only individual members. The common legal and factual question at issue is whether Defendant violated section 1681b of the FCRA by furnishing a consumer report without a permissible purpose during the applicable time period as alleged.

77. **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claims are typical of the claims of each Class member, which all arise from the same operative facts and are based on the same legal theories.

78. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Class because her interests are aligned with, and are not antagonistic to, the interests of the members of the Class she seeks to represent, she has retained counsel competent and experienced in such litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

79. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the

controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VI. CAUSES OF ACTION

**Fair Credit Reporting Act, 15 U.S.C. § 1681b, on behalf of Plaintiff and the Class**

80. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

81. Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable for negligently and willfully furnishing consumer reports without a permissible purpose, in violation of 15 U.S.C. § 1681b.

## V. JURY DEMAND

82. Plaintiff hereby demands a trial by jury on all issues so triable.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, MANDY WILSON, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and the Class and against Defendant as follows:

  a. That an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel to represent the Class;

  b. That judgment be entered against Defendant for statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member, pursuant to 15 U.S.C. § 1681n(a);

  c. That judgment be entered against Defendant for punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

  d. That judgment be entered for actual damages for Plaintiff pursuant to 15 U.S.C. §§ 1681n(a)(1) and/or 1681o(a)(1);

  e. That the Court award costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and/or o; and

  f. That the Court grant such other and further relief as may be just and proper.

    Respectfully submitted,
    **MANDY WILSON,**
    **on behalf of herself and**
    **all others similarly situated**

    By: s/ David M. Marco

Dated: January 20, 2023

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
5250 Old Orchard Road, Suite 300
Skokie, IL 60077
Telephone: (312) 546-6539
Facsimile: (888) 418-1277
E-Mail: dmarco@smithmarco.com