UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MANDY WILSON,                          )
                                       )
                    Plaintiff,         )
                                       )
          v.                           )     No. 1:23-cv-00131-JPH-MJD
                                       )
TRANSUNION, LLC,                       )
                                       )
                    Defendant.         )

**ORDER GRANTING MOTION FOR PRELIMINARY CLASS APPROVAL**

Plaintiff Mandy Wilson alleges that Defendant TransUnion, LLC impermissibly furnished consumer reports to third parties in violation of the Fair Credit Reporting Act.  Plaintiff has filed a motion for preliminary approval of a class action settlement and release.  Dkt. 163.  Plaintiff seeks preliminary approval of a proposed settlement agreement and release (the "Settlement Agreement") with TransUnion, certification of the Settlement Class for settlement purposes, preliminary designation of Plaintiff as class representative, preliminary appointment of class counsel, preliminary appointment of a settlement administrator, and notice directed to all class members who would be bound by the Settlement Agreement.  *Id.*  TransUnion does not oppose the motion.  *Id.*  For the reasons stated below, Plaintiff's motion for preliminary approval, dkt. [163], is **GRANTED**.

**I.**
**Facts and Background**

On April 13, 2023, Plaintiff filed her amended class action complaint.  Dkt. 20.  In it, she alleges that TransUnion sold consumer reports to third

1

parties, including debt collector Portfolio Recovery Associates ("PRA"), in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq. Id.* at 11 ¶ 68.

A product that TransUnion sells to its customers is its Triggers for Collection Product ("TFC"). Dkt. 164 at 6. That product allows debt collectors like PRA to receive consumer reports on consumers from whom PRA is attempting to collect debts by sending TransUnion an "ADD" code via TransUnion's secure file transfer protocol ("SFTP"). Dkt. 20 at 7 ¶ 43. To stop receiving those consumer reports, PRA sends a "DELETE" request via SFTP. *Id.* at 8 ¶ 54.

Plaintiff filed for Chapter 7 bankruptcy in March 2020, and the Bankruptcy Court entered an order discharging her debts in July 2020. Dkt. 20 at 2 ¶ 12, 3 ¶ 16. Once PRA received notice of Plaintiff's bankruptcy discharge, it sent a "DELETE" code to TransUnion via SFTP. *Id.* at 5–6 ¶¶ 35–36. However, in January 2021 and on multiple occasions afterwards, TransUnion sold Plaintiff's consumer report to PRA. *Id.* at 11 ¶ 70.

Plaintiff argues that "this violates the FCRA because there was no permissible purpose for TransUnion's transmission" of her credit report to PRA and that "such conduct was willful, meaning TransUnion should be liable for payment of statutory damages." Dkt. 164 at 7. TransUnion moved to dismiss Plaintiff's claim that it willfully violated FCRA, and the Court denied that motion. Dkt. 56.

On May 23, 2025, Plaintiff filed a motion for preliminary approval of class action settlement.[1]  The proposed Class Representative is Plaintiff Mandy Wilson.  *See* dkt. 163-1 at 3 (Settlement Agreement).  The proposed Settlement Class includes:

> All natural persons within the United States and its territories who: (1) were assigned a User Reference Number ("URN") listed within the Data Productions provided by TransUnion and third party collection agency Portfolio Recovery Associates LLC ("PRA"); (2) which Data Productions show that TransUnion sent PRA data through its Triggers For Collection ("TFC") product for that URN; (3) more than two business days after PRA submitted a request to delete that URN from TFC; (4) between January 20, 2021 and December 31, 2023.

*Id.* at 5–6 (Settlement Agreement § 2.1).

Plaintiff has submitted to the Court a 14-page Settlement Agreement that would resolve her claims against TransUnion.  Dkt. 163-1.  Some of the critical provisions are:

- TransUnion will pay $2,500,000 in cash to settle the claims of the Settlement Class.  *Id.* at 5–6 (Settlement Agreement §§ 1.28, 2.2).

- Within 10 days of this Order, TransUnion and PRA will provide to the Administrator the name and last known mailing address of each Class Member identified in the Data Productions.  *Id.* at 7 (Settlement Agreement § 2.4(b)).  The Administrator will use this data to make the calculations required by the Settlement.  *Id.*

- Within 45 days of the Effective Date, the Administrator will send Class Member Awards to all Class Members entitled to them.  *Id.* at 9 (Settlement Agreement § 2.6(c)).

- The parties anticipate a "recovery of approximately $40.00 per class member without any need for a claim form, proof of damages, or out-of-pocket losses, or a certification of any sort."  Dkt. 164 at 10.

---

[1] The Order incorporates the defined terms set forth in the Settlement Agreement, dkt. 163-1.

3

- Class Members may opt out of the Class by submitting a written opt-out statement by the Opt-Out Deadline, which is 90 calendar days after this Order. Dkt. 163-1 at 5, 8 (Settlement Agreement §§ 1.22, 2.5(a)).

- If 2% or more of the Class Members opt out of the settlement, TransUnion shall have the right to terminate the Settlement Agreement. *Id.* at 8 (Settlement Agreement § 2.5(a)).

- Class Members may object to the Settlement Agreement by submitting written objections up to the Objection Deadline, which is 90 calendar days after this Order. *Id.* at 5, 8 (Settlement Agreement §§ 1.21, 2.5(b)).

- On the Effective Date, Class Members will release all known and unknown claims relating to TransUnion furnishing their consumer-report data through its TFC product. *Id.* at 6–7 (Settlement Agreement § 2.3(a)-(b)).

- Class Members "retain any rights they may have to sue TransUnion for any errors on their consumer reports." Dkt. 164 at 10.

- Class Counsel will apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund. Dkt. 163-1 at 11 (Settlement Agreement § 3.2).

- TransUnion agrees not to oppose or appeal Class Counsel's application for attorneys' fees if the application does not exceed one-third of the Settlement Fund. *Id.* at 11 (Settlement Agreement § 3.2).

- Class Counsel will move for a Class Representative Service Award of $5,000 for Plaintiff. *Id.* at 4, 10 (Settlement Agreement §§ 1.10, 3.1).

- No portion of the settlement fund will revert to TransUnion. *Id.* at 11 (Settlement Agreement § 3.4).

- Any residual left in the Settlement Fund Account will be divided equally among two Cy Pres Recipients, the National Center for Law and Economic Justice and the National Consumer Law Center. *Id.* at 4, 11 (Settlement Agreement §§ 1.12, 3.4).

## II.
## Applicable Law

Class actions were designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155 (1982). "Federal Rule of Civil Procedure 23 governs class actions." *Santiago v. City of Chicago*, 19 F.4th 1010, 1016 (7th Cir. 2021). "Rule 23 gives the district courts broad discretion to determine whether certification of a class-action lawsuit is appropriate," *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008), and "provides a one-size-fits-all formula for deciding the class-action question," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010).

A court's approval is required when "a class [is] proposed to be certified for the purposes of settlement." Also, courts must direct notice of a settlement class "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). A court is authorized to direct notice only if the court "will likely be able to (i) approve the proposal under 23(e)(2); and (ii) certify the class for purposes of the judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) requires that a Court determine the settlement is "fair reasonable, and adequate" before approving a binding class settlement. *See also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014). The Court's notice must meet the requirements of Rule 23(c)(2)(B).

"Rule 23(a) enumerates four—and only four—requirements for class certification: numerosity, commonality, typicality, and adequacy of

5

representation." *Simpson v. Dart*, 23 F.4th 706, 711 (7th Cir. 2022).  In addition to those "prerequisites," the class must fit one of Rule 23(b)'s "particular types of classes, which have different criteria." *Santiago*, 19 F.4th at 1016.  Here, the parties seek class certification under Rule 23(b)(3), dkt. 164 at 13, so "common questions of law or fact must predominate over individual inquiries, and class treatment must be the superior method of resolving the controversy," *Santiago*, 19 F.4th at 1016.

"A class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites for class certification have been met." *Santiago*, 19 F.4th at 1016.  When parties seek class certification as part of a settlement, the provisions of Rule 23 "designed to protect absentees by blocking unwarranted or overbroad class definitions . . . demand undiluted, even heightened, attention." *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

### III.
### Analysis

**A. Class certification**

The fact that the parties have reached a settlement is relevant to the class-certification analysis.  *See Smith v. Sprint Communs. Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004); *Amchem Prods.*, 521 U.S. at 618–20.  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Smith*, 387 F.3d at 614 (quoting *Amchem Prods.*, 521 U.S. at 620).  A court may not, however,

"abandon the Federal Rules merely because a settlement seems fair, or even if the settlement is a 'good deal.' In some ways, the Rule 23 requirements may be even more important for settlement classes." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). "This is so because certification of a mandatory settlement class, however provisional technically, effectively concludes the proceeding save for the final fairness hearing." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 849 (1999).

Here, Plaintiff has met her burden of satisfying the Rule 23(a) and (b) requirements.

### 1. Rule 23(a) requirements

#### a. Numerosity

To satisfy the numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the proposed Class consists of:

> All natural persons within the United States and its territories who: (1) were assigned a User Reference Number ("URN") listed within the Data Productions provided by TransUnion and third party collection agency Portfolio Recovery Associates LLC ("PRA"); (2) which Data Productions show that TransUnion sent PRA data through its Triggers For Collection ("TFC") product for that URN; (3) more than two business days after PRA submitted a request to delete that URN from TFC; (4) between January 20, 2021 and December 31, 2023.

Dkt. 163-1 at 5–6 (Settlement Agreement § 2.1). Plaintiff contends that this amounts to 38,805 members. Dkt. 164 at 10, 14. Courts in the Seventh Circuit have found that substantially smaller classes satisfy the numerosity requirement. *See Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 860

7

(7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement."); *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969). Because the proposed Class is so numerous that joinder of all members would be impracticable, Plaintiff has satisfied the numerosity requirement.

### b. Commonality

To satisfy the commonality requirement, there must "be one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018) (citing *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015)). Here, Plaintiff contends that "the common issue is whether TransUnion violated the permissible purpose requirement of the FCRA by continuing to transmit TFC data once PRA requested that the transmissions for a particular consumer stop." Dkt. 164 at 14–15. This is undoubtedly a question of law and fact that is common to the proposed Class. Additionally, the parties further mitigate the risk of an "unwarranted or overbroad class definition[]," *Amchem Prods.*, 521 U.S. at 620, by relying directly on Data Productions from TransUnion and PRA to identify individuals who may qualify as Class Members, dkt. 163-1 at 7 (Settlement Agreement § 2.4(b)).

For these reasons, Plaintiff has satisfied the commonality requirement.

### c. Typicality

To satisfy the typicality requirement, "the claims or defenses of the representative party [must] be typical of the claims or defenses of the class." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000)). "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory.'" *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). "Although 'the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members,' the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro*, 580 F.3d at 492 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Plaintiff has satisfied the typicality requirement because her claims are typical of those of the Class since "PRA attempted to send TransUnion a delete code to remove" Plaintiff and the other proposed Class Members "from TFC credit monitoring but TransUnion did not process those requests." Dkt. 164 at 15.

### d. Adequacy of Representation

To satisfy the adequacy of representation requirement, the representative parties must "fairly and adequately protect the interests of the class." *Amchem Prods.*, 521 U.S. at 625. "This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) (citing *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)).

Plaintiff has satisfied the adequacy-of-representation requirement. Plaintiff's claims are typical of those brought by other Class members, and her interests appear to be entirely consistent with those of the other Class members because she—like the other Class members—seek to maximize the Class's recovery from TransUnion for the sale of consumer reports to third parties in violation of FCRA. Plaintiff has actively participated in this litigation by "answering written discovery, producing documents, and sitting for a multiple-hour deposition." *See* dkt. 164 at 15–16. And the fact that Plaintiff seeks a Service Award does not undermine the adequacy of her representation. *See Scott v. Dart*, 99 F.4th 1076, 1082–83 (7th Cir. 2024) ("[I]ncentive awards to named plaintiffs are permitted so long as they comply with the requirements of Rule 23.").

Plaintiff's counsel has also invested substantial time and resources in this case by investigating the underlying facts, researching the applicable law,

litigating this case, participating in mediation, and negotiating a detailed settlement. *See* dkt. 164 at 9. Last, Plaintiff's counsel has experience litigating complex consumer class actions and do not appear to have interests that conflict with those of the Class. *See id.* at 16 (citing affidavits of Plaintiff's counsel at dkt. 164-1).

### 2. Rule 23(b)(3) requirements

Having determined that Plaintiff's proposed Class satisfies all of Rule 23(a)'s requirements, the Court must evaluate whether it satisfies any one of the three requirements in Rule 23(b). Certification of a class under Rule 23(b)(3) is proper if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and [when] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This rule requires two findings: predominance of common questions over individual ones and superiority of the class action mechanism. *Id.* In assessing whether those requirements have been met, courts should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.*

Plaintiff has shown that common questions of law and fact predominate. Specifically, the core issue—TransUnion's conduct in failing to stop the

transmission of TFC data—is identical for all Class Members.  *See* dkt. 164 at 17.

Furthermore, Plaintiff has shown that, for this case, a class action is vastly "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  It will be the most efficient way to resolve Plaintiff's claims, especially considering that Plaintiff and the Class Members would have a difficult and costly task in seeking relatively small damages solely on an individual basis.  *See* dkt. 164 at 17.  Additionally, "[s]ince this case has been pending for more than two years, Plaintiff is unaware of any other consumer who has filed a similar complaint, indicating there has not been widespread consumer interest in prosecuting this claim."  *Id.*  Accordingly, class resolution would be superior to other available methods of pursuing these claims.

The Court certifies the class for settlement purposes under Rule 23(b)(3).

### B. Preliminary Appointment of Class Counsel

After a court certifies a Rule 23 class, the court is required to appoint class counsel to represent the class members.  *See* Fed. R. Civ. P. 23(g)(1).  In appointing class counsel, the court must consider:

(i)  the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Plaintiff is represented by David M. Marco of SmithMarco, P.C. and Stacy M. Bardo of Bardo Law, P.C. Dkt 163-1 at 4 (Settlement Agreement § 1.5); dkt. 164-1 at 2 ¶ 1 (Marco Declaration); dkt. 164-1 at 11 (Bardo Declaration). These attorneys have done substantial work identifying, investigating, prosecuting, and settling Plaintiff's claims. *See* dkt. 164 at 9. Plaintiff's counsel also have experience litigating consumer class actions they have filed, litigated, and settled around the country. *See id.* at 16; *see also* dkt. 164-1 (Marco and Bardo Declarations, which outline the expertise and prior experience of counsel).

As such, the Court preliminarily appoints David Marco and Stacy Bardo as Class Counsel.

## C. Preliminary Settlement Approval

### 1. Adequacy of representation of the class

As explained above, Plaintiff and Class Counsel have adequately represented the Class.

### 2. Settlement Agreement was negotiated at arm's length

As explained in Plaintiff's brief, the Settlement Agreement is the product of years of litigation. *See* dkt. 164 at 9. Furthermore, the Settlement Agreement was the result of a formal mediation and informal settlement negotiations. *Id.*

Yet one provision of the Settlement Agreement gives the Court pause. The Settlement Agreement contains a "clear sailing" clause, which states that TransUnion agrees not to oppose or appeal Class Counsel's application for attorneys' fees if the application does not exceed one-third of the Settlement Fund. Dkt. 163-1 at 11 (Settlement Agreement § 3.2). Clear sailing provisions are not barred *per se*, *see In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 712–13 (7th Cir. 2015), but these clauses, at least in cases where class members receive a non-cash settlement award, "should be subjected to intense critical scrutiny," *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014) (noting that "clear-sailing clauses are found mainly in cases . . . in which the value of the settlement to the class members is uncertain because it is not a cash settlement").

Here, however, there are aspects of the Settlement Agreement that mitigate potential unfairness from the clear sailing clause. First, the consideration to be paid by TransUnion is $2,500,000 in cash, not a non-cash settlement award like a coupon. *See* dkt. 163-1 at 5–6 (Settlement Agreement §§ 1.28, 2.2). Second, the Settlement Agreement does not include a "kicker" clause,[2] as no portion of the Settlement Fund will revert to TransUnion. *Id.* at 11 (Settlement Agreement § 3.4); *see In re Sw. Airlines Voucher Litig.*, 799 F.3d at 712 (explaining that kicker clauses receive similar scrutiny as clear sailing clauses). And finally, as discussed above, there are numerous other factors

---

[2] A kicker clause causes any reduction of the attorneys' fee award to revert to the Defendant instead of the Class.

showing that the Settlement Agreement nonetheless makes the Class whole and constitutes a fair resolution for Class Members.

In sum, the Settlement Agreement was negotiated at arm's length, and the Settlement Agreement's clear sailing provision does not undermine that conclusion.

### 3. Settlement Agreement treats class members equitably relative to each other

The Settlement Agreement and Release treats Class members equitably relative to each other.  "The Net Cash Settlement Amount will be divided by the URNs associated with unique individuals, to yield a per-person figure," and the Class Member Award will equal the per-person figure.  *Id.* at 6 (Settlement Agreement § 2.2(a)(2)).

### 4. The relief provided by the Settlement Agreement is adequate

The $2,500,000 cash in relief is adequate.  The parties anticipate a "recovery of approximately $40.00 per class member without any need for a claim form, proof of damages, or out-of-pocket losses, or a certification of any sort."  Dkt. 164 at 10.  This pro rata amount represents just under half the minimum amount of statutory damages owed to a plaintiff who successfully proves a willful violation of FCRA.  Dkt. 164 at 21; *see* 15 U.S.C. § 1681n (allowing statutory damages recovery of "not less than $100 and not more than $1,000"); *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1194 (7th Cir. 2021) ("A willful violation entitles a consumer to actual damages or statutory damages . . . ."); *Ford v. CEC Ent. Inc.*, 2015 WL 11439033, at *4 (S.D. Cal. Dec. 14, 2015) ("[W]ithout a showing of actual injury, it is unlikely that Class

Members would receive the maximum statutory damages."). And as Plaintiff explains, $40 per class member is "within a range approved in other FCRA settlements." Dkt. 164 at 20 (collecting cases).

In addition, no portion of the settlement fund will revert to TransUnion, and the *cy pres* relief will be used only for the portion residual left in the Settlement Fund Account after distribution to the Class Members. Dkt. 163-1 at 11 (Settlement Agreement § 3.4). This further supports a finding of fairness, reasonableness, and adequacy. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 786–87 (7th Cir. 2014) (explaining that "kicker" clauses should face "a strong presumption of . . . invalidity").

In sum, this factor weighs in favor of the fairness, reasonableness, and adequacy of the proposed Settlement Agreement.

### 5. The strength of Plaintiff's case compared against the amount of TransUnion's settlement offer

The most important settlement-approval factor is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs.*, 463 F.3d at 653 (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)). Here, continued litigation with TransUnion presents significant risks and costs—the most obvious risk is that Plaintiff will not be successful on her claims. Furthermore, "[e]ven if [Plaintiff was] to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from

now.'" *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (quoting *Reynolds*, 288 F.3d at 284). Moreover, as explained above, the consideration to be paid by TransUnion is $2,500,000 in cash, and no portion of the Settlement Fund will revert to TransUnion. Dkt. 163-1 at 5–6, 11 (Settlement Agreement §§ 1.28, 2.2, 3.4). The parties' estimate that the Settlement Agreement will provide each Class Member with approximately $40—just under half the minimum statutory damages award available to meritorious plaintiffs—which appropriately accounts for both the uncertainty of Plaintiff's claims on the merits and the time value of money.

Accordingly, the strength of Plaintiff's case compared to TransUnion's proposed settlement weighs in favor of the fairness, reasonableness, and adequacy of the Settlement Agreement.

### 6. The likely complexity, length, and expense of continued litigation

The likely complexity, length, and expense of trial weighs heavily in favor of the fairness, reasonableness, and adequacy of the Settlement Agreement. Continuing to litigate this case will require vast expense and a great deal of time, on top of that already expended.

### 7. Opposition to the Settlement Agreement

Because the parties have not yet sent the notice, it is premature to assess this factor.

### 8. The opinion of experienced counsel

The opinion of counsel weighs heavily in favor of the fairness, reasonableness, and adequacy of the Settlement Agreement. Courts are

"entitled to rely heavily on the opinion of competent counsel," *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980)); *Isby v. Bayh*, 75 F.3d, 1191, 1200 (7th Cir. 1996), and as explained above, counsel for the parties are experienced and highly competent.  Further, there is no indication that the Settlement Agreement is the victim of collusion.  *See Isby*, 75 F.3d at 1200.  Class Counsel will be paid up to one-third of the Settlement Fund.  Dkt. 163-1 at 11 (Settlement Agreement § 3.2).

### 9.  The stage of the proceedings and the amount of discovery completed

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims."  *Armstrong*, 616 F.2d at 325.  This litigation has been ongoing for multiple years, including formal mediation and informal settlement negotiations.  Dkt. 164 at 9.  The Court denied TransUnion's partial motion to dismiss in February 2024.  Dkt. 56.  Further, the parties "engage[d] in the exchange of thousands of pages of written discovery, which led to multiple depositions," and "the parties spent substantial time exchanging documents with PRA and deposing multiple PRA fact witnesses."  *Id.*  Discovery also involved three expert witnesses.  *Id.*  There is no indication that additional discovery would further assist the parties in reaching a settlement agreement that is fair to the Class.  Accordingly, this

18

factor weighs in favor of the fairness, reasonableness, and adequacy of the proposed Settlement Agreement.

### D. Class Notice

Under Federal Rule of Civil Procedure Fed. R. Civ. P. 23(c)(2)(B), a notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Further, when presented with a proposed class settlement, a court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." 3 Newberg on Class Actions § 8:32 (4th ed. 2010).

The proposed notice satisfies Rule 23's requirements and puts Class members on notice of the Settlement Agreement. The Administrator will mail notices to the Class members within 30 calendar days of this Order. Dkt. 163-1 at 7 (Settlement Agreement § 2.4(c)). Notice will also be published on a website established by the Administrator. *Id.* The website will contain the

"Complaint, Class Notices, Plaintiff's motion seeking Preliminary Approval, the Preliminary Approval Order, Plaintiff's motion seeking Final Approval, and the Final Approval Order until at least ninety (90) calendar days after Final Approval." *Id.*

Moreover, the proposed notice is appropriate because it describes the terms of settlement, informs the Class about the allocations of attorney's fees and expenses, explains how Class members may opt-out of the Class and object to the settlement, and provides specific information regarding the date time, and place of the fairness hearing. *Id.* at 24–25 (proposed notice of settlement); *see Air Lines Stewards & Stewardesses Assoc. v. Am. Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972) (notice that provided summary of proceedings to date, notified of significance of judicial approval of settlement and informed of opportunity to object at hearing satisfied due process).

### E. Preliminary Appointment of Settlement Administrator

Plaintiff requests the preliminary appointment of Continental DataLogix to serve as Administrator. Plaintiff has engaged Continental DataLogix to conduct the notice and distribution processes. *See* dkt. 163-1 at 3, 7, 9–10 (Settlement Agreement §§ 1.2, 2.4, 2.6). Given the complexity and size of this case, Continental DataLogix's services in connection with implementing the notice plan will be helpful. Therefore, the Court preliminarily appoints Continental DataLogix as Administrator.

## IV.
## Conclusion

Plaintiff's Motion for Preliminary Approval, dkt. [163], is **GRANTED**.

Pursuant to Federal Rule of Civil Procedure 23(e)(1)(B), Plaintiff has shown that the Court will likely be able to (i) approve the Settlement Agreement under Rule 23(e)(2); and (ii) certify the Class for purposes of the Settlement Agreement only.

The Court finds that it will likely be able to approve the Settlement Agreement as fair, reasonable, and adequate, subject to the right of any Class Member to challenge the Settlement Agreement at a hearing after notice has been disseminated to the class.

The Court finds that it will likely be able to hold that the proposed settlement consideration and class relief are fair, reasonable, adequate, and equitable for purposes of the Settlement Agreement, and to approve the Released TransUnion Claims provided to the releasees.

The Court preliminarily appoints Continental DataLogix to serve as Administrator.  The Court also finds that it will likely be able to approve Continental DataLogix to serve as Administrator after final approval. Continental DataLogix will be responsible for disseminating Class Notice in the form set forth at Exhibit B to the Settlement Agreement and for undertaking all Administrator duties contemplated by the Settlement Agreement prior to the Court's grant or denial of final approval of the Settlement Agreement.

The Court preliminarily certifies the proposed class and designates Plaintiff Mandy Wilson as the Class Representative.  The Court preliminarily appoints David Marco and Stacy Bardo as Class Counsel.

The preliminary certification of the proposed Class, the preliminary designation of class representatives, and the preliminary designation of Class Counsel established by this Order shall be automatically vacated if the Settlement Agreement is terminated or is disapproved by the Court, any appellate court and/or any other court of review, or if any of the settling parties successfully invokes its right to terminate the Settlement Agreement, in which event the Settlement Agreement and the fact that it was entered into shall not be offered by the settling parties or construed as an admission or as evidence for any purpose, including the "certifiability" of any class.

The Court determines that distribution of the Class Notice to be given as set forth at Exhibit B to the Settlement Agreement is reasonable and the best practicable notice under the circumstances; satisfies Rule 23(h) of the Federal Rules of Civil Procedure; is reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the Settlement Agreement, their right to object to and opt-out of the Settlement Agreement, the effect of the Settlement Agreement (including the releases to be provided thereunder), Class Counsel's request for attorneys' fees, reimbursement of litigation expenses and settlement administration expenses, and the requested service awards for Plaintiff; constitutes due, adequate, and sufficient notice to all persons entitled

to receive notice; and meets the requirements of due process, the Federal Rules of Civil Procedure, and the United States Constitution.

The Court preliminarily finds that with an agreement between Plaintiff and TransUnion it will likely be able to certify and approve a settlement class under Federal Rule of Civil Procedure 23.

The Court preliminarily approves the Settlement Agreement as sufficiently fair and reasonable to warrant sending notice to the Class preliminarily certified for settlement purposes and hereby directs Plaintiff and Continental DataLogix to give notice to the class as set forth in the Settlement Agreement.

Plaintiff shall file proof by affidavit of the distribution of the Class Notice at or before the Fairness Hearing.

Any attorneys hired by individual members of the Class for the purpose of objecting to the Settlement Agreement shall file with the Clerk of the Court and serve on Class Counsel and TransUnion's counsel a notice of appearance prior to the Fairness Hearing.

Class members who object to the settlement must follow the procedure as outlined in the Settlement Agreement § 2.5(b). Unless otherwise ordered by the Court, Class members who do not timely make their objections as provided by that section will be deemed to have waived all objections and shall not be heard or have the right to appeal approval of the Settlement Agreement, as outlined in the Settlement Agreement § 2.5(b).

Class members who wish to exclude themselves must follow the procedure as outlined in the Settlement Agreement § 2.5(a). Class members who do not file timely written requests for exclusion in accordance with the Settlement Agreement shall be bound by all subsequent proceedings, orders, and judgments in this action, as outlined in the Settlement Agreement § 2.5(a).

Class Counsel and TransUnion's counsel shall promptly furnish each other with copies of any and all objections and requests for exclusion that come into their possession.

Any objector requesting access to confidential materials must first obtain leave of Court and agree to be bound by an agreed confidentiality order issued by the Court, which shall provide for the same confidentiality obligations that applied to the parties during the litigation and as provided by the Settlement Agreement.

The Court hereby adopts the following settlement procedure:

| Event | From Order Granting Preliminary Approval |
|---|---|
| Notice Sent to Class | +30 Days |
| Plaintiff's Motion for Attorney's Fees and Costs | +76 Days |
| Settlement Opt-Outs and Objections Deadline | +90 Days |
| Attorney's Fees Request Objections Deadline | +90 Days |
| Motion for Final Approval of Settlement and Service Award to Class Representative | +121 Days |
| Submission of Opt-Outs and Objections List | +125 Days |

A Fairness Hearing will be held on December 15, 2025 at 1:30 p.m. in Room

329, United States Courthouse, 46 East Ohio Street, Indianapolis, Indiana.

**SO ORDERED.**

Date: 8/6/2025

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel