UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MANDY WILSON on behalf of herself and all other similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TRANSUNION, LLC, <br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 1:23-cv-00131-JPH-MJD |

## FINAL CLASS SETTLEMENT APPROVAL ORDER

Plaintiffs allege that Defendant TransUnion, LLC, impermissibly furnished consumer reports to third parties in violation of the Fair Credit Reporting Act.  Dkt. 20.  Plaintiffs have asked the Court for final approval of the Class Action Settlement Agreement, dkt. 169, and to award attorneys' fees and expenses, dkt. 167.  The Court has considered counsels' arguments that were presented at the December 15, 2025, fairness hearing and the filings submitted in support of approval, dkts. 167, 170.  For the reasons set forth below, the Court **GRANTS** the unopposed Motion for Final Approval, dkt. [169], and the Motion for Attorneys' Fees and Expenses, dkt. [167], and **APPROVES** the Settlement Agreement.

## I.
## Facts and Background

On April 12, 2023, Plaintiff filed her amended class action complaint. Dkt. 20.  In it, she alleges that TransUnion sold consumer reports to third parties, including debt collector Portfolio Recovery Associates ("PRA"), in

1

violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* *Id.* at 3, 11 ¶¶ 14, 68.  A product that TransUnion sells to its customers is its Triggers for Collection Product ("TFC").  Dkt. 164 at 6.  That product allows debt collectors like PRA to receive consumer reports for consumers PRA is attempting to collect debts from by sending TransUnion an "ADD" code via TransUnion's secure file transfer protocol ("SFTP").  Dkt. 20 at 7 ¶ 43.  To stop receiving those consumer reports, PRA sends a "DELETE" request via SFTP.  *Id.* at 8 ¶ 54.

Plaintiff Mandy Wilson filed for Chapter 7 bankruptcy in March 2020, and the Bankruptcy Court entered an order discharging her debts in July 2020.  Dkt. 20 at 2–3 ¶¶ 12, 16.  Once PRA received notice of Plaintiff's bankruptcy discharge, it sent a "DELETE" code to TransUnion via SFTP.  *Id.* at 5–6 ¶¶ 35–36.  However, in January 2021 and on multiple occasions afterwards, TransUnion sold Plaintiff's consumer report to PRA.  *Id.* at 11 ¶ 70.

Plaintiff argues that "this violates the FCRA because there was no permissible purpose for TransUnion's transmission" of her credit report to PRA and that "such conduct was willful, meaning TransUnion should be liable for payment of statutory damages."  Dkt. 164 at 7.  TransUnion moved to dismiss Plaintiff's claim that it willfully violated FCRA, and the Court denied that motion.  Dkts. 22, 56.

The Court preliminarily certified the settlement class action, and approved notice and the procedure for notice to potential Class Members. Dkt.

2

166. (Preliminary Approval Order).[1]  The Court also preliminarily approved proposed Class Representative Mandy Wilson.  *Id.* at 22.  The preliminary certified class includes:

> All natural persons within the United States and its territories who: (1) were assigned a User Reference Number ("URN") listed within the Data Productions provided by TransUnion and third party collection agency Portfolio Recovery Associates LLC ("PRA"); (2) which Data Productions show that TransUnion sent PRA data through its Triggers For Collection ("TFC") product for that URN; (3) more than two business days after PRA submitted a request to delete that URN from TFC; (4) between January 20, 2021 and December 31, 2023.

*Id.* at 3.  Last, the Court preliminarily approved Class Counsel and preliminarily appointed a Settlement Administrator.  *Id.* at 13, 20.

To settle the claims in this case, TransUnion agreed to pay $2,500,000 into a non-reversionary cash fund.  Dkt. 163-1 at 5–6, 11 §§ 1.28, 2.2, 3.4 (Settlement Agreement and Release); dkt. 170 at 8.  The Plaintiffs propose to deduct the following from that amount: a $5,000 Service Award to the Class Representative, dkts. 163-1 at 10 § 3.1; 170 at 10; a combined $833,333.33 Fee & Expense Award to Class Counsel, dkts. 163-1 at 11 § 3.2; 170 at 11–12; and $126,000 for Administration Costs, dkt. 170 at 20.

Pursuant to the Settlement Agreement, each Class Member whose consumer-report data was furnished to PRA through TFC more than two business days after PRA's deletion request for them during the Class Period shall be entitled to a cash payment from the Net Cash Settlement Amount. Dkt. 163-1 at 6 § 2.2.  Class Members are not required to submit a claim.

---

[1] The Court adopts and incorporates by reference the analysis and findings set forth in the Preliminary Approval Order, dkt. 166.

Dkts. 163-1 at 8 § 2.5; 170 at 5.  Instead, Class Members may opt out of the Settlement Class by submitting an opt-out statement that is (i) received by the opt-out deadline (90 days after preliminary approval), (ii) includes the Class Member's name and last four digits of their social security number, and (iii) is personally signed and dated by the Class Member.  Dkt. 163-1 at 5, 8 §§ 1.22, 2.5.  Those who do not opt out are deemed members of the Settlement Class. *Id.* at 9 § 2.5(c).

After distribution of the Class Representative Service Award, Administrative Costs, and Fee & Expense Award (collectively, "Adjustments"), the Settlement Administrator shall distribute Class Member Awards to entitled Class Members on a *pro rata* basis.  *Id.* at 3–5, 9 §§ 1.3, 1.7, 1.20, 2.2, 2.6; dkt. 170 at 8–9.  If there is any residual after the required distributions, the funds shall be divided equally between the *Cy Pres* Recipients: the National Center for Law and Economic Justice and the National Consumer Law Center.  *Id.* at 4, 11 § 1.12, 3.4; dkt. 170 at 11.

At the fairness hearing on December 15, 2025, the parties confirmed that 36,069 Class Members were identified and sent a class notice.  *See also* dkt. 170 at 4.  Ninety-seven percent of those notices were received.  *Id.* at 14; dkt. 163-1 at 7 § 2.4(c) (noting that receipt will be presumed if no bounce-back message was received, and the notice was not returned within 15 calendar days).  Two individuals opted out, and there were no objections.  Dkt. 170-1 at 4 (Settlement Administrator Decl.); dkt. 173.

## II.
## Legal Standard

Class actions were designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155 (1987) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979)); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 832 (1999) ("In drafting Rule 23(b), the Advisory Committee sought to catalogue in functional terms those recurrent life patterns which call for mass litigation through representative parties.").

Any settlement that results in the dismissal of a class action requires court approval. *See* Fed. R. Civ. P. 23(e); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). After preliminary review and a hearing, a "district court may approve a settlement of a class action if it concludes that it is 'fair, reasonable, and adequate.'" *Kaufman v. Am. Express Travel*, 877 F.3d 276, 283 (7th Cir. 2017) (quoting Fed. R. Civ. P. 23(e)(2)). "[D]istrict courts should act as the 'fiduciary of the class,' subject to the high duty of care that the law requires of fiduciaries." *Id.*

## III.
## Analysis

### A. Class Certification

"Rule 23 gives the district courts 'broad discretion to determine whether certification of a class-action lawsuit is appropriate,'" *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2009), and "provides a one-size-fits-all formula for deciding the class-action question," *Shady Grove Orthopedic Assocs., P.A. v.*

5

*Allstate Ins. Co.*, 559 U.S. 393, 399 (2010). "A class 'may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,' and 'actual, not presumed, conformance with Rule 23(a) remains . . . indispensable.'" *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (quoting *Gen. Tel.*, 457 U.S. at 160–61); *see also Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 558 (7th Cir. 2003).

A plaintiff seeking class certification must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—and any one subsection of Rule 23(b). *Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 513 (7th Cir. 2009); *Arreola*, 546 F.3d at 794. In addition, the class must meet two implied prerequisites of Rule 23: (1) that the class definition be sufficiently precise to enable a court to ascertain the identity of class members by reference to objective criteria; and (2) that the named representative be a member of the proposed class. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

The fact that the parties have reached a settlement is relevant to the class-certification analysis. *See Smith v. Sprint Comms. Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004); *Amchem Prods. v. Windsor*, 521 U.S. 591, 618–20 (1997). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Smith*, 387 F.3d at 614 (quoting *Amchem Prods.*, 521 U.S. at 620). A court may not, however, "abandon the Federal Rules merely because a settlement seems fair,

6

or even if the settlement is a 'good deal.' In some ways, the Rule 23 requirements may be even more important for settlement classes." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). "This is so because certification of a mandatory settlement class, however provisional technically, effectively concludes the proceeding save for the final fairness hearing." *Ortiz*, 527 U.S. at 849.

The Court previously analyzed these factors and gave preliminary approval to class certification. Dkt. 166. The same reasons that supported the Court's preliminary approval of class certification also support final certification of the class. *Id.* at 7–11.

## B. Appointment of Class Counsel

After a court certifies a Rule 23 class, the court is required to appoint class counsel to represent the class members. *See* Fed. R. Civ. P. 23(g)(1). In appointing class counsel, the court must consider:

(i)   the work counsel has done in identifying or investigating potential claims in the action;
(ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii) counsel's knowledge of the applicable law; and
(iv)  the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

The Court previously considered these factors and designated David M. Marco of SmithMarco, P.C., and Stacy M. Bardo of Bardo Law, P.C., as Class Counsel. Dkt. 166 at 13. There are no new facts that weigh against this decision.

### C. Notice

For settlement classes, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The Preliminary Approval Order approved the content of the notice and proposed manner of notice. Dkt. 166 at 19–20. The Court now grants final approval of the notice, which adequately informed the Class Members of the terms of the Settlement Agreement, their right to request exclusion from the Class, and their opportunity to file written objections and appear to be heard at the Final Approval hearing. Dkts. 170 at 13–16; 170-1 at 2–7. The Settlement Administrator, Continental DataLogix, used direct mailing of notice to Class Members and established a phone number and website to communicate and receive Class Member inquiries, which was included in the Class Notice. Dkt. 170 at 14–15; 170-1 at 2–7 (Settlement Administrator Decl.).

The parties have since followed the manner of notice set forth in the Settlement Agreement and the Preliminary Approval Order. Dkt. 170-1. The notices were mailed to 36,069 putative Class Members. *Id.* at 3 ¶ 5. 5,732 Notices were returned as undeliverable. *Id.* at 3 ¶¶ 5–6. Of those, Continental Datalogix found updated addresses for 5,088 and re-mailed to those addresses. *Id.* at ¶¶ 6–7. From those, 544 were returned as undeliverable. *Id.* ¶ 7. In sum, 34,881 Class Members received direct mail Notice, which equates to approximately 97% of the class. Dkt. 170 at 14. Thus, the Court approves

manner of notice to class members under the requirements of Fed. R. Civ P. Rule 23(e)(1)(B).

### D. Motion for Attorney's Fees and Costs

#### i. Attorney's Fees

Under Federal Rule of Civil Procedure 23(h), "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  "In assessing the reasonableness of an attorney fee award for a class action settlement, district courts should do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 832–33 (7th Cir. 2018).  When considering reasonableness, district courts may consider the award either as a percentage of the fund or through the lodestar method. *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014).

Here, applying the percentage of fund method, Class Counsel is requesting an attorney's fee award ($776,143.13) that represents approximately 33.57% of the Net Cash Settlement Amount plus Fee & Expense Award (and 33.33% of the overall Settlement Fund).[2]

---

[2] The "ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack*, 768 F.3d 622, 630 (7th Cir. 2014).  The value of the settlement is the amount minus the fee requested, the administration and notice costs, litigation costs, and approved service awards. *Id.* at 630.  Here, to calculate the value that will go to Class Members, take the total settlement amount ($2,500,000.00) minus the requested fees & expenses ($833,333.33), minus the

Requests for one-third of the settlement are within the normal rate of compensation for class action settlements. *See, e.g., Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *10 (S.D. Ill. Dec. 16, 2018) ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.33% or higher to counsel in class action litigation."). Although the fee requested is slightly above 33.33%, a fee award of 33.57% is within range of the typical contingency fee charged by class action lawyers. *See Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("The typical contingent fee is between 33 and 40 percent."); *see also In re Forefront Data Breach Litig.*, No. 21-cv-887, 2023 WL 6215366, at *8 (W.D. Wis. 2023) (finding a fee amounting to 41% of settlement fund in a data breach case as reasonable).

The request for reimbursement of costs and expenses in the amount of $57,190.20 likewise is reasonable, representing counsels' out-of-pocket costs and expenses incidental and necessary to litigating this matter, including coverage of filing fees, service, discovery, expert fees, and private mediation. Dkt. 167 at 16; *see Spegon v. Cath. Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999) (noting that "[d]istrict courts have wide discretion in determining the appropriate amount of attorneys' fees and costs").

Therefore, the Court approves as reasonable a combined Fee & Expense Award of $833,333.33.

---

quoted administrative costs ($126,000.00), minus the requested service award ($5,000.00), which equals $1,535,666.67.  To calculate the percentile of the attorneys' fees, take the requested amount of fees ($776,143.13) over the total class value plus requested fee ($1,535,666.67 + $776,143.13), which equals approximately 33.57%.

### ii. Settlement Administrator Costs

Plaintiffs request an estimated $126,000.00 in costs of notice and administration.  Dkt. 170 at 20.  The notice and administration costs requested here—about 5% of the Settlement Amount—are proportionally similar to those requested and granted in other cases, and otherwise appear reasonable.  *See In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 787, 795 (N.D. Ill. 2015) (approving class action settlement with notice and administration costs amounting to 6.7% of overall fund); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 222–23 (N.D. Ill. 2016) (awarding notice and administration costs amounting to 15% of overall fund).  Therefore, the Court approves the requested $126,000.00 in notice and administration costs as reasonable.

### iii. Class Representative Service Award

Plaintiffs request a $5,000 class representative service award.  Dkts. 170 at 10; 167 at 16–19.  In determining whether such an award is warranted, relevant factors include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation."  *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).  Service awards compensating named plaintiffs for work done on behalf of the class are routinely granted.  Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See id.* (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to

11

participate in the suit"); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

Here, these factors are readily satisfied. Ms. Wilson brought a suit that resulted in a recovery of $2,500,000.  *See* dkt. 163-1.  Additionally, this case has been pending for three years, supporting Plaintiffs' assertion that Ms. Wilson has "devoted significant time and energy to the litigation."  Dkts. 167 at 17; 170 at 10.  A $5,000 award also falls comfortably within the range previously approved within this circuit.  *See Chambers v. Together Credit Union,* No. 19-CV-00842-SPM, 2021 WL 1948452, at *3 (S.D. Ill. May 14, 2021) ("In the Seventh Circuit, . . .  class representative service awards of $10,000 to $25,000 or more are not uncommon.") (citing *Cook*, 142 F.3d at 1016 (affirming $25,000 service award)); *Burnett v. Conseco Life Ins. Co.*, No. 1:18-CV-00200-JPH-DML, 2021 WL 119205, at *12 (S.D. Ind. Jan. 13, 2021) (granting $25,000 service award to each of two class representatives); *Heekin v. Anthem, Inc.*, No. 1:05-CV-01908-TWP, 2012 WL 5878032, at *5 (S.D. Ind. Nov. 20, 2012) (same). For these reasons, the Court approves the requested $5,000 class representative service award as reasonable.

### E. Final Settlement Approval

The Court may approve the settlement only after finding that it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Rule 23(e)(2) requires the Court to consider whether (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's

length, (3) the relief provided by the settlement is adequate, and (4) the proposal treats class members equitably relative to each other.  Additionally, the Seventh Circuit has also identified the following factors as considerations under Rule 23(e)(2): "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed."  *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)

The Court previously considered these factors in connection with granting preliminary approval to the Settlement Agreement. Dkt. 166 at 13–19. At the fairness hearing, the Court heard additional arguments from counsel on "the strength of the case for plaintiffs on merits, balanced against the extent of the settlement offer."  *Wong*, 773 F.3d at 859.  This is "[t]he most important factor relevant to the fairness of a class action settlement."  *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

In balancing the strength of the plaintiffs' case against the amount offered in a proposed settlement, district courts "should begin by quantifying the net expected value of continued litigation to the class. To do so, the court should 'estimate the range of possible outcomes and ascribe a probability to each point on the range.'" *Synfuel*, 463 F.3d at 653 (citing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002)).  However, more

13

recently, the circuit has clarified that "the *Synfuel/Reynolds* evaluation of potential outcomes need not always be quantified, particularly where there are other reliable indicators that the settlement reasonably reflects the merits of the case." *Kaufman v. Am. Express Travel Related Servs. Co.,* 877 F.3d 276, 285 (7th Cir. 2017). Other reliable indicators include extensive arm's-length negotiations with a third-party mediator, and the parties contentiously litigating a motion to dismiss. *Wong*, 773 F.3d at 864.

Here, considering the parties' filings and arguments at the fairness hearing, the Court is satisfied that this case bears these reliable indicators of fairness, reasonableness, and adequacy. Specifically, this Settlement Agreement was reached following unsuccessful private mediation. Dkt. 163 at 2. Further, this case was contentiously litigated. Defendant filed a partial motion to dismiss, dkts. 22, which was denied, dkt. 56, and the parties briefed "multiple motions to compel, exchanged thousands of documents in written discovery, subpoenaed documents and depositions from third party PRA, served initial expert reports, and conducted more than ten depositions." Dkts. 163 at 2; 170 at 6–7, 18–19.

Last, Plaintiffs undertook a considerable risk in bringing this litigation, including a potential summary judgment finding if the violation was not willful. *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("An integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." (quoting *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309

14

(7th Cir. 1985)). Here, considering the risks and the real benefits provided to the Class Members at this time—approximately $42 per Class Member, dkt. 170 at 20—the strength of Plaintiffs' case compared to the Defendant's proposed relief weighs in favor of fairness, reasonableness, and adequacy of the Settlement Agreement.

For these reasons, and the reasons that supported the Court's preliminary approval of class certification, dkt. 166 at 13–19, the Settlement is fair, reasonable, and adequate.

## IV.
## Conclusion

The Motion for Final Approval of Class Action Settlement and Plaintiffs' Motion for Attorney's Fees and Expenses are **GRANTED**. Dkts. [167] and [169].

After holding a hearing, the Court **GRANTS FINAL APPROVAL** of the class settlement as a fair, adequate, and reasonable compromise of a bona fide dispute under Federal Rule of Civil Procedure 23(e)(2).  Plaintiffs and TransUnion, and their counsel, are directed to implement and consummate the Settlement Agreement according to its terms and conditions.

The Court further finds and orders as follows:

1. The previously certified Class is finally certified under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes.

2. The Court confirms the appointments of (a) Named Plaintiff Mandy Wilson as Class Representative of the Settlement Class, (b) David M. Marco of SmithMarco, P.C., and Stacy M. Bardo of Bardo Law, P.C.,

as Class Counsel, and (c) Continental Datalogix as the Settlement Administrator of the claims process.

3. Per the Settlement Agreement, TransUnion agrees to pay $2,500,000.00 into a non-reversionary cash fund.  From that amount, the Court approves: a $5,000.00 service award to the Class Representative; $833,333.33 in attorneys' fees and expenses to Class Counsel, and $126,000.00 for the quoted costs of notice and administration. These payments shall be made from the Settlement Amount according to the procedures set forth in the Settlement Agreement.

4. The Class Members shall receive their settlement shares according to the procedures set forth in the Settlement Agreement.

5. The Court orders that all Class Members are bound by the terms of the Settlement Agreement and fully release and discharge their claims to the extent set out in the Settlement Agreement.

6. If any funds remain after the required distributions, they shall be divided equally between the *Cy Pres* recipients: the National Center for Law and Economic Justice and the National Consumer Law Center.

7. The Court retains jurisdiction for enforcement of the Settlement Agreement, which is incorporated herein by reference.

Based on this settlement, this matter is **DISMISSED WITH PREJUDICE**.

Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 3/3/2026

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

16

Distribution:

All electronically registered counsel